IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIELLE SUTTER,                                No. 3:21-cv-01874-HZ

               Plaintiff,                      OPINION & ORDER

    v.

SHRINERS HOSPITALS FOR
CHILDREN, a nonprofit corporation, and
SUSAN STEEN, an individual,

               Defendants.


Randy J. Harvey
Andrew Thomas Mittendorf
Kristofer T. Noneman
Employment Law Professionals
20015 SW Pacific Hwy, Ste 221
Sherwood, OR 97140

       Attorneys for Plaintiff


Amanda Bryan
John M. Kreutzer
Bullivant Houser Bailey PC

One SW Columbia St, Ste 800
Portland, OR 97204

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Danielle Sutter sued Defendants Shriners Hospitals for Children and Susan

Steen, alleging claims for violations of the Family and Medical Leave Act ("FMLA"),

discrimination based on disability and status as a whistleblower, and failure to pay all wages at

termination. Compl., ECF 1. Defendants move for summary judgment on all claims. ECF 39. For

the following reasons, the Court grants the motion.

## BACKGROUND

      Defendant Shriners Hospitals for Children ("Shriners") is a foreign nonprofit corporation

with its principal place of business in Florida. Compl. ¶ 5; Answer ¶ 5. At all material times,

Defendant Shriners has had more than 500 employees nationally. *Id.* Defendant Shriners operates

a hospital in Portland, Oregon. *Id.* Defendant Shriners hired Plaintiff Danielle Sutter as a

Department Assistant III for the surgical department on or about September 23, 2019. Compl. ¶

11; Answer ¶ 11. Plaintiff served in this position until she was terminated on January 25, 2021.

Compl. ¶ 41; Answer ¶ 41. Defendant Shriners hired Defendant Susan Steen as the Surgical

Services Manager on March 2, 2020. Compl. ¶ 16; Answer ¶ 16. At that time, Defendant Steen

became Plaintiff's direct supervisor. Kreutzer Decl. ¶ 2, Ex. 1 ("Sutter Dep.") at 53:12-14.

      The parties dispute whether Plaintiff was a 1.0 or 0.8 full time equivalent ("FTE")

employee. Plaintiff's position was advertised as a part-time, 0.8 FTE position. Sutter Dep. 21:3-

4; Kreutzer Decl. ¶ 4, Ex. 3 (job posting from Indeed.com). However, Plaintiff's offer letter

stated that she was a 1.0 FTE employee and that her employment was "at-will." Mittendorf Decl.

¶ 2, Ex. 1. This was the only document that ever indicated that Plaintiff was a 1.0 FTE employee.

2 – OPINION & ORDER

Kreutzer Decl. ¶ 3, Ex. 2 ("Risinger Dep.") at 68:8-10. The new hire checklist for Plaintiff lists her position as 0.8 FTE. Daugherty Decl. ¶ 3, Ex. 1.

Plaintiff corresponded with Human Resources and her supervisors about her FTE status. On February 8, 2020, Plaintiff's then-supervisor, Suzanne Diers, emailed Plaintiff: "You worked more than your 8 hours every day and came in on timecard Friday. I really need you [sic] do your best to stay within your 64 hours." Kreutzer Decl. ¶ 5, Ex. 4; Sutter Dep. 49:12-16. On June 15, 2020, Defendant Steen emailed Plaintiff, "I apologize for our miscommunication regarding your PT status. I am not able to move you into a full time position, at this time. Your hours are 0700-1530 Mon-Thurs: 64 hours/PP." Kreutzer Decl. ¶ 6, Ex. 5; Sutter Dep. 55:9-20. On November 30, 2020, Plaintiff emailed Defendant Steen to ask her to enter Plaintiff's paid time off ("PTO") for Friday, November 27, 2020. Steen Decl. ¶ 2, Ex. 1 at 3. The same day, Defendant Steen responded, "Hello Danielle, I fixed your timecard, However you are not eligible for PTO on Friday, That is an extra shift day for you and would be above your FTE. We have spoken about this several times, If you have any concerns I will refer you to HR." *Id.* Ex. 1 at 2. Later that day, Sarah Risinger, Human Resources Director for Defendant Shriners, emailed Plaintiff:

> Susan's response to your email is correct. You would only receive PTO for days you were expected to work. You are expected to report to work Mondays through Thursdays, 8:15am-4:45pm, 64 hours per pay period. You are not expected to report to work on Fridays, nor are you able to volunteer for additional front desk screening shifts on days when we are closed; thus you are not able to receive PTO for this day.

*Id.* Risinger testified that Plaintiff could request to work additional hours and be approved in advance, and had done so more than once. Risinger Dep. 51:25-52:5.

Defendant Shriners observes the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Friday after Thanksgiving, and Christmas

Day. Daugherty Decl. ¶ 5, Ex. 3 at 2-3 (employee handbook). "If the observed holiday falls on an employee's regularly scheduled workday and the employee works in a department or function, which would be closed, time off will be paid with the employee's available PTO." *Id.*

Plaintiff's job description as posted on Indeed.com stated that a Department Assistant III "[p]rovides daily review of Kronos time and attendance system, assuring the accuracy of employee records in meeting legal and regulatory requirements." Kreutzer Decl. ¶ 4, Ex. 3 at 2. The internal job description listed the same responsibility. *Id.* ¶ 9, Ex. 8 at 1. But in practice, Plaintiff was not tasked with assuring the accuracy of employee time records; she was asked only to perform a timekeeping function by entering employees' reports of their hours. Sutter Dep. 46:18-47:7. Plaintiff was not responsible for determining employees' eligibility for leave. Kreutzer Decl. ¶ 10, Ex. 9 ("Steen Dep.") at 29:6-17. Defendant Steen was responsible for making such determinations and for finalizing payroll. *Id.* at 29:15-17, 30:7-10. Plaintiff began her timekeeping duties about one month after she started her job. Sutter Dep. 30:21-31:5. Plaintiff's 90-day performance evaluation stated that Plaintiff "has done a great job learning Kronos and does payroll every 2 weeks." Daugherty Decl. ¶ 4, Ex. 2 at 1. Kronos was the electronic time recording system Defendant Shriners used. Sutter Dep. 14:11-13.

On or about September 28, 2020, Defendant Steen removed Plaintiff's access to certain records related to timekeeping, including leave information. Sutter Dep. 180:2-3; Risinger Dep. 38:11-22. Risinger states that she explained to Plaintiff that letters relating to employee leave were "intended for the manager only." Risinger Dep. 39:11-13. Plaintiff believed that she could not properly perform her timekeeping duties without access to that information. Sutter Dep. 176:19-20. On September 29, 2020, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI") in which she stated, "Upon hiring, Susan Steen ordered me to alter

payroll information in a manner that I believed to be in violation of a state or federal law, rule or regulation." Mittendorf Decl. ¶ 5, Ex. 4 at 1.

On November 23, 2020, Plaintiff obtained a note from her doctor that stated, "Due to stress and anxiety over the demands of the duties of all functions dealing with weekly payroll, it is recommended and advised that she be removed from all payroll responsibilities under her job description." Kreutzer Decl. ¶ 12, Ex. 11 at 1. Plaintiff obtained a second letter from her doctor on November 25, 2020, which stated, "Due to patient experiencing stress, anxiety and panic attacks over the demands of the duties of all functions dealing with weekly payroll, it is recommended and advised that she be removed from all payroll responsibilities under her job description." *Id.* at 2. Plaintiff "did not specifically say, I have a disability or I need an accommodation for a disability." Risinger Dep. 18:15-17. Defendant Shriners met with Plaintiff "a number of times to go through her accommodation requests and discuss different options and kind of go through the interactive process." *Id.* at 16:11-14. Defendant Shriners suggested more frequent breaks as an accommodation. *Id.* at 16:15-17. Plaintiff asked for all timekeeping responsibilities to be removed. *Id.* at 17:15-16. Defendant Shriners declined to remove Plaintiff from timekeeping responsibilities "[b]ecause it was determined that that was a primary job responsibility, that that was an essential function of her role." *Id.* at 60:25-61:2.

On January 19, 2021, Plaintiff's counsel emailed a demand letter to Defendant Shriners. Mittendorf Decl. ¶ 6, Ex. 5. Plaintiff was terminated on January 25, 2021. Compl. ¶ 41; Answer ¶ 41. According to Defendants, "Plaintiff was terminated for violating Shriners' timekeeping policy, violating Shriners' guidelines for appropriate conduct policy, and Shriners' core value of integrity - time theft for overreporting hours worked." Def. Mot. 8 (citing Risinger Dep. 78:23-79:16). Defendant Shriners asserts that Plaintiff misrepresented her own timekeeping and was

not willing to discuss the matter. Risinger Dep. 79:17-22. Plaintiff testified that she did not

record her hours worked for the pay period of December 27, 2020, through January 9, 2021.

Sutter Dep. 13:15-22. When shown her paper timesheet for that pay period during her deposition,

Plaintiff testified that nothing on it was her writing. *Id.* at 12:19-21. However, on January 8,

2021, in response to an email from Defendant Steen asking Plaintiff to verify her hours worked

on December 28, 29, and 30, Plaintiff wrote, "I wrote it on my timekeeping sheet." Steen Decl. ¶

3, Ex. 2. According to Defendant, Plaintiff's hours as written on her paper timesheet deviated

from hours worked as shown from garage and video records. Risinger Decl. ¶ 3; Kreutzer Decl.

¶¶ 14-15, Exs. 13 (paper timesheet), 14 (spreadsheet created by Risinger showing hours

scheduled and recorded and security footage for employees including Plaintiff). Plaintiff does

not dispute the difference between the hours written on the paper timesheet and the video

footage, but alleges that Defendant Steen altered the timesheet. Pl. Resp. 9, ECF 44.

Plaintiff ultimately filed two BOLI complaints against Defendant Shriners, one during

her employment and one after she was terminated. Mittendorf Decl. Ex. 4 (September 29, 2020,

complaint); Kreutzer Decl. ¶ 13, Ex. 12 at 4-9 (April 6, 2021, complaint). In her 2020 complaint,

Plaintiff alleged retaliation for whistleblowing and requesting family leave, and age

discrimination. Mittendorf Decl. Ex. 4 at 1. She alleged that Defendant Shriners retaliated

against her by reducing her hours, interfering with her leave, and altering her timecards, among

other conduct. *Id.* at 2. On September 30, 2021, Plaintiff received a 90-day Notice of Right to

File a Civil Suit for that complaint. Mittendorf. Decl. Ex. 8 at 1. In her 2021 complaint, Plaintiff

alleged discrimination based on disability. Kreutzer Decl. Ex. 12 at 4. On November 8, 2021,

Plaintiff received a 90-day Notice for her second BOLI complaint. Mittendorf Decl. Ex. 9 at 1.

Plaintiff sued Defendants on December 28, 2021.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

The parties agree that Defendants are entitled to summary judgment on Claims 1 and 7, Plaintiff's FMLA claims. Def. Mot. 11; Pl. Resp. 11. Defendant Shriners is also entitled to summary judgment on Claims 2 through 5, Plaintiff's discrimination claims, because Defendant has shown a legitimate, nondiscriminatory reason to terminate Plaintiff, and Plaintiff has not produced adequate evidence that this reason was pretextual. And Defendant Shriners is entitled to summary judgment on Claim 6, Plaintiff's claim for unpaid wages, because the undisputed evidence shows that Plaintiff was not entitled to PTO for the days in question.

## I.    Claims 1 and 7: FMLA Violations

Plaintiff's first and seventh claims for relief allege that Defendants violated the FMLA by failing to pay her PTO approved under the Families First Coronavirus Response Act ("FFCRA"). Compl. ¶¶ 42-64, 141-144. The parties agree that Defendants are entitled to summary judgment on these claims because Defendant Shriners, as an employer with over 500 employees, was not a covered employer under the FFCRA. Def. Mot. 11-12; Pl. Resp. 11.

## II.    Claims 2 through 5: Discrimination

Plaintiff's second through fifth claims allege discrimination. Her second and third claims for relief allege that Defendant Shriners discriminated against her based on disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the state-law equivalent, Or. Rev. Stat. ("O.R.S.") § 659A.112. Compl. ¶¶ 65-80, 81-99. Plaintiff's fourth and fifth claims for relief allege that Defendant Shriners discriminated against her based on her status as a whistleblower under O.R.S. 659A.199 and 659A.203. *Id.* ¶¶ 100-122, 123-126. The Court concludes that Plaintiff has made a prima facie case for her fourth claim only. Defendant is

entitled to summary judgment on all four claims because Plaintiff has not shown that Defendant's legitimate reason for terminating her was pretextual.

A.    The *McDonnell Douglas* Framework

The *McDonnell Douglas* burden-shifting framework applies to Plaintiff's discrimination claims, whether they arise under federal or state law. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001). Under this framework, the plaintiff must establish a prima facie case of discrimination, which creates a presumption of discrimination that the defendant can rebut by producing evidence of "a legitimate, nondiscriminatory reason" for the employment decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant does so, the presumption of discrimination no longer applies. *Id.* at 510-11. "[T]he burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). "[A] plaintiff can prove pretext in two ways: (1) *indirectly,* by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) *directly,* by showing that unlawful discrimination more likely motivated the employer." *Id.* at 1170 (internal quotations omitted). If the evidence of pretext is circumstantial, it must be "specific" and "substantial." *Id.*

B.    Prima Facie Case

i.    Disability Discrimination Claims

In her disability discrimination claims, Plaintiff alleges that she suffered stress and anxiety because of how she was instructed to handle payroll duties, that she asked to be relieved of those duties as an accommodation, and that Defendant Shriners declined to accommodate her. Compl. ¶¶ 65-80, 81-99. Defendant argues that Plaintiff was not disabled, and that timekeeping

was an essential job function, so Defendant was not required to exempt Plaintiff from this duty. Def. Mot. 12-14.

To show that her employer discriminated against her on the basis of disability under the ADA, "the plaintiff must establish a prima facie case by showing that: (1) [s]he is a disabled person within the meaning of the statute; (2) [s]he is a qualified individual with a disability; and (3) [s]he suffered an adverse employment action because of h[er] disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001). The same standard applies to a claim under Oregon law. O.R.S. 659A.139 (providing that the Oregon disability discrimination statute "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended by the federal ADA Amendments Act of 2008 and as otherwise amended"); *Reaves v. Nexstar Broad., Inc.*, 327 F. Supp. 3d 1352, 1364 (D. Or. 2018) (applying same standard to federal and state-law disability discrimination claims). Under the ADA, a "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1).

> An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

*Id.* § 12102(3)(A). The Oregon statute follows similar standards. O.R.S. 659A.104.

Defendant focuses on the first and second elements of the prima facie case and does not dispute that Plaintiff suffered an adverse action when she was terminated. Defendant asserts that Plaintiff was not disabled. Def. Mot. 13-14. Defendant points to the doctor's notes, which, while

stating that Plaintiff suffered from stress and anxiety, do not state that Plaintiff is disabled. *Id.* at 13. Plaintiff counters that stress and depression can be considered mental impairments under the ADA and Oregon law. Pl. Resp. 16 (citing *Snead*, 237 F.3d at 1088). Plaintiff is correct. It is also true that work-related stress is not a disability if it is temporary. *Hosea v. Donley*, 584 F. App'x 608, 611 (9th Cir. 2014) ("The district court correctly determined that Hosea failed to establish that he had a disability because his doctors found him only temporarily unable to work based on acute work related stress from July 13, 2010, through September 25, 2010. There is no evidence that Hosea suffered long-term or permanent impairment due to work-related stress."). Defendant bears the burden to show that an impairment is temporary. *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 435 (9th Cir. 2018). Plaintiff's doctor did not clarify how long Plaintiff's stress and anxiety were likely to persist, and no other evidence in the record indicates whether Plaintiff's condition was permanent or temporary. Nor do the parties address whether and how Plaintiff was substantially limited in one or more major life activity.

Instead, Plaintiff argues "that by Shriners asserting they engaged in the interactive process, Shriners was treating Plaintiff as having a disability." Pl. Resp. 14. To show disability under the regarded-as prong, "a plaintiff must show that the employer knew that the employee had an actual impairment or perceived the employee to have an impairment, and that the impairment was not transitory or minor." *Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, 902 F.3d 916, 923 (9th Cir. 2018), *as amended* (Sept. 12, 2018). In *BNSF*, the Ninth Circuit held that the employer regarded the employee as having a disability where it conditioned a job offer on the employee obtaining a new MRI of his back at his own expense. *Id.* at 924. And in *Nunies*, the Ninth Circuit held that there was a genuine dispute as to whether the employer regarded the employee as disabled where the employee was told that a transfer was approved, reported that he

was suffering shoulder pain three days after that, and was informed two days later that he had to

resign. 908 F.3d at 434-35.

Here, the record at most supports a finding that Defendant Shriners was trying to

understand Plaintiff's stress surrounding the performance of her duties. It does not support a

finding that Defendant regarded Plaintiff as disabled. Plaintiff's doctor's notes stated that she

suffered stress and anxiety from performing her payroll duties. They do not state that she was

disabled or that she had an underlying condition that caused stress and anxiety or made her more

susceptible to stress and anxiety. There is no evidence that Plaintiff informed Defendant of any

such condition or that Defendant otherwise perceived such a condition. There is no evidence that

Plaintiff did more than present the doctor's notes and tell Defendant that she wanted to be

removed from payroll duties. Defendant then discussed this with her. Holding a conversation

about ways to manage work-related stress and anxiety and considering possible accommodations

is not, on its own, enough to support the inference that Defendant viewed Plaintiff as disabled.

*See Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir. 2001), *opinion*

*clarified*, 292 F.3d 1045 (9th Cir. 2002), *superseded by statute on other grounds as stated in*

*Weaving v. City of Hillsboro*, 763 F.3d 1106 (9th Cir. 2014) ("[W]hen an employer takes steps to

accommodate an employee's restrictions, it is not thereby conceding that the employee is

disabled under the ADA or that it regards the employee as disabled."). Plaintiff has not

established the first element of the prima facie case.

Defendant's main argument in favor of summary judgment is that no accommodation was

required because timekeeping was an essential function of Plaintiff's position. Def. Mot. 12-13.

Plaintiff disagrees. Pl. Resp. 12-14. "Under Oregon disability law, like the ADA, 'an individual

is qualified for a position if the individual, with or without reasonable accommodation, can

perform the essential functions of the position.'" *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941,

944 (9th Cir. 2015) (quoting O.R.S. 659A.115; *see* 42 U.S.C. § 12111(8)). "The ADA does not

require an employer to exempt an employee from performing essential functions or to reallocate

essential functions to other employees." *Dark v. Curry County*, 451 F.3d 1078, 1089 (9th Cir.

2006) (holding that defendant was not required to exempt plaintiff from operating heavy

equipment, which "occup[ied] 65% of total work time"). "Essential functions are fundamental

job duties of the employment position . . . not including the marginal functions of the position."

*Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009) (internal

quotations omitted). Evidence to consider in determining whether a function is essential

includes:

> [T]he employer's judgment as to what functions of a job are essential; job
> descriptions prepared before advertising or interviewing applicants; the amount of
> time spent on the job performing the function; the consequences of not requiring
> the applicant or employee to perform the function; and the work experience of
> current and former employees.

*Bates v. United Parcel Services, Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (citing 42 U.S.C. §

12111(8) and 29 C.F.R. § 1630.2(n)(2)(iii)) (internal quotations and alterations omitted).

The parties dispute whether the job description supports Defendant's position or

Plaintiff's position. Defendant argues that timekeeping was included in the job description. Def.

Mot. 13. Plaintiff counters that it was not. Pl. Resp. 12. The job description states that a

Department Assistant III "[p]rovides daily review of Kronos time and attendance system,

assuring the accuracy of employee records in meeting legal and regulatory requirements."

Kreutzer Decl. Ex. 3 at 2. The internal job description lists the same responsibility. *Id.* Ex. 8 at 1.

But the parties agree that the work Plaintiff actually performed was to input employees' time into

the system, not to review it for accuracy. Sutter Dep. 46:18-47:7; Steen Dep. 29:6-17. The job

description does not exactly match Plaintiff's duties, and even if it did, it would not resolve the issue because the parties dispute how much time Plaintiff spent performing this duty. Plaintiff testified, "sometimes I did the timekeeping." Sutter Dep. 29:1-4. Plaintiff's 90-day evaluation stated that Plaintiff "does payroll every 2 weeks." Daugherty Decl. Ex. 2 at 1. Risinger testified that Plaintiff "was spending a good amount of time conducting those responsibilities." Risinger Dep. 61:9-14. Defendant's corporate representative testified that "it is a majority of her job function and removing that function, the—the position would no longer exist." Mittendorf Decl. ¶ 3, Ex. 2 ("Daugherty Dep.") at 93:4-6. It is not clear from the record whether timekeeping was an essential function of Plaintiff's position. But Defendant is still entitled to summary judgment on Plaintiff's disability discrimination claims because Plaintiff has not made a prima facie case that she is disabled within the meaning of the ADA and its Oregon analogue.

ii.    Whistleblower Claims

In her whistleblower claims, Plaintiff alleges that on or about September 28, 2020, Defendant Steen restricted Plaintiff's access to employees' leave information, but Plaintiff needed such access to properly process payroll, and that she reported this concern to Human Resources and was then subject to harassment, reduction of job duties, and denial of PTO. Compl. ¶¶ 100-122, 123-126. Defendant Shriners argues that the statute of limitations bars Plaintiff's claims and that she did not have a reasonable belief that the law was being violated. Def. Mot. 14-16. The Court concludes that Plaintiff's claims are not time-barred. And while there is a genuine dispute as to whether Plaintiff had a subjective belief that the law was being violated, her belief was not reasonable.

a.    Statute of Limitations

A one-year statute of limitations applies to the whistleblower claims. O.R.S.

659A.875(1)(a). But if the plaintiff timely files a complaint with BOLI, the plaintiff must file a

civil suit "within 90 days after a 90-day notice is mailed to the complainant under O.R.S.

659A.880 (Ninety-day notice)." O.R.S. 659A.875(2). Plaintiff filed a BOLI complaint against

Defendant Shriners on September 29, 2020, alleging whistleblower retaliation (among other

claims). Mittendorf Decl. Ex. 1. She received a 90-day Notice on September 30, 2021. *Id.* Ex. 8

at 1. Plaintiff filed a second BOLI complaint against Defendant Shriners on April 6, 2021,

alleging disability discrimination. Kreutzer Decl. Ex. 12 at 4-9. She received a 90-day Notice for

her second complaint on November 8, 2021. Mittendorf Decl. Ex. 9 at 1. Plaintiff sued

Defendants on December 28, 2021. The 90-day period for Plaintiff's first BOLI complaint ended

on December 29, 2021.

In arguing that Plaintiff did not timely file her civil suit, Defendant Shriners asserts that

"[u]nder Oregon law, an employee is not required to file a BOLI complaint but if she does so,

O.R.S. 659A.820 preempts the employee from filing any other claims that could have been set

forth in the BOLI complaint." Def. Mot. 14. Defendant argues that the conduct forming the basis

of Plaintiff's whistleblower claims was not alleged in her BOLI complaints. *Id.* at 15. Defendant

relies on *Dean v. Les Schwab Tire Centers Of Portland*, No. 20CV33130, 2021 WL 4938669, at

*3 (Or. Cir. Sep. 28, 2021). In *Dean*, the court construed the statute and regulations to require

that the BOLI complaint allege the conduct that later forms the basis of the civil suit to benefit

from the statute of limitations associated with that complaint. 2021 WL 4938669, at *3. The

court then concluded that some of the plaintiff's claims were time-barred because they were

neither filed within one year of when the underlying conduct occurred nor included in the plaintiff's administrative complaint. *Id.* at *3-*4. The Court finds *Dean*'s analysis persuasive.

While Defendant is correct that Plaintiff's BOLI complaints did not allege all of the conduct that forms the basis of her whistleblower claims, Plaintiff is correct that the claims are still timely. As Plaintiff points out, at all material times, the State of Oregon was under a state of emergency because of the COVID-19 pandemic, and the statute of limitations was extended during the relevant period. Pl. Resp. 19 (citing H.B. 4212 § 7(1), 80th Or. Legis. Assemb., 1st Spec. Sess. (Or. 2020)). House Bill 4212 extends the period to commence an action if "the expiration of the time to commence an action or give notice of a claim falls within the time in which any declaration of a state of emergency issued by the Governor related to COVID-19, and any extension of the declaration." H.B. 4212 § 7. House Bill 4212 became effective on June 30, 2020. H.B. 4212, 80th Leg., 1st Spec. Sess. (Or. 2020); *see also Bond v. Shriners Hosp. for Child.*, No. 3:20-CV-01943-SB, 2021 WL 1343058, at *6 (D. Or. Mar. 1, 2021), *findings and recommendation adopted sub nom. Bond v. Shriners Hosps. for Child.*, No. 3:20-CV-01943-SB, 2021 WL 1341854 (D. Or. Apr. 9, 2021).

A state of emergency related to COVID-19 was in effect in Oregon from March 8, 2020, through the date on which Plaintiff filed suit. Exec. Order No. 20-03 (Mar. 8, 2020); Exec. Order No. 20-24 (May 1, 2020); Exec. Order No. 20-30 (June 30, 2020); Exec. Order No. 20-38 (Sept. 1, 2020); Exec. Order No. 20-59 (Oct. 27, 2020); Exec. Order No. 20-67 (Dec. 17, 2020); Exec. Order No. 21-05 (Feb. 25, 2021); Exec. Order No. 21-10 (Apr. 29, 2021); Exec. Order No. 21-15 (June 25, 2021); Exec. Order No. 21-36 (Dec. 21, 2021); Exec. Order No. 22-03 (Mar. 17, 2022). All of the retaliatory conduct Plaintiff alleges took place during the COVID-19 state of emergency, between September 2020 and January 2021, and after House Bill 4212 was enacted.

The Complaint was filed during the state of emergency. The statute of limitations was tolled for

any conduct not included in the BOLI complaint, so the suit was timely filed. To the extent that

Defendant Shriners argues that failure to include allegations in the BOLI complaint precludes a

subsequent civil suit based on those allegations for reasons other than untimeliness, the Court

does not read *Dean* to so hold and declines to adopt that position. The Court now turns to the

merits of Plaintiff's whistleblower claims.

b.    Protected Activity

O.R.S. 659A.199 provides:

> It is an unlawful employment practice for an employer to discharge, demote,
> suspend or in any manner discriminate or retaliate against an employee with regard
> to promotion, compensation or other terms, conditions or privileges of employment
> for the reason that the employee has in good faith reported information that the
> employee believes is evidence of a violation of a state or federal law, rule or
> regulation.

O.R.S. 659A.199(1). And O.R.S. 659A.203 provides that a nonprofit employer may not "take or

threaten to take disciplinary action against an employee for the disclosure of any information that

the employee reasonably believes is evidence of: . . . A violation of any federal, state or local

law, rule or regulation by the public or nonprofit employer." O.R.S. 659A.203(1)(b)(A). "To

make a prima facie case of retaliation under these statutes, a plaintiff must establish three

elements: (1) she engaged in a protected activity, (2) she suffered an adverse employment action,

and (3) there is a causal link between the protected activity and adverse action." *Lynch v.

Klamath Cnty. Sch. Dist.*, No. 1:13 CV 02028-CL, 2015 WL 2239226, at *4 (D. Or. May 12,

2015). Defendant focuses on the first element without addressing the second and third.

Defendant argues that Plaintiff did not engage in a protected activity because she did not

reasonably believe that the law was being violated based on her timekeeping duties. Def. Mot.

16. As discussed above, it is undisputed that Plaintiff was tasked with inputting employees' time,

not ensuring the accuracy of payroll entries. Plaintiff cannot rely on the job posting to argue that there is a factual dispute on this issue when she concedes that she was not asked to ensure the accuracy of payroll entries. And Plaintiff agrees that without access to employees' leave information, "Plaintiff could accurately and therefore legally perform payroll preparation and/or timekeeping." Pl. Resp. 8. Even assuming that Plaintiff held a subjective belief that withholding the leave information from her resulted in unlawful time entries, such a belief was not reasonable where Plaintiff knew that she was not responsible for ensuring the accuracy of time entries because her supervisor held that responsibility. Because O.R.S. 659A.203, the statute under which Plaintiff makes her fifth claim, requires a reasonable belief that the reported activity was unlawful, Plaintiff has failed to show that she engaged in protected activity, and Defendant Shriners is entitled to summary judgment on Plaintiff's fifth claim for relief.

Plaintiff's main argument against summary judgment on her retaliation claims is that "[s]imply put, Plaintiff's belief is a question for the fact finder. Defendants cannot assert what Plaintiff's belief was and a fact finder should be required to make the determination." Pl. Resp. 20. Plaintiff's fourth claim is made under O.R.S. 659A.199, which requires only a good-faith belief. *Neighorn v. Quest Health Care*, 870 F. Supp. 2d 1069, 1102 (D. Or. 2012). Plaintiff's BOLI complaint is evidence that she subjectively believed she was being asked to make illegal time entries. Whether she had a good-faith belief is a question for the factfinder. A reasonable jury could conclude that Plaintiff engaged in protected activity for her fourth claim. As for the second element of the prima facie case, the parties agree that Plaintiff was terminated, which is an adverse action. Defendant does not contest the third element in its motion. Plaintiff has made a prima facie case of discrimination on her fourth claim for relief. The Court turns to whether Defendant Shriners provided a legitimate, nondiscriminatory reason for terminating Plaintiff.

C.     Legitimate, Nondiscriminatory Reason

Defendants allege that Plaintiff was terminated for legitimate, good faith, nondiscriminatory reasons. Answer ¶ 148. The legitimate, nondiscriminatory reason for the adverse action is the second step in the *McDonnell Douglas* framework. Defendants assert that "Plaintiff was terminated for violating Shriners' timekeeping policy, violating Shriners' guidelines for appropriate conduct policy, and Shriners' core value of integrity - time theft for overreporting hours worked." Def. Mot. 18. Defendant Shriners points to Plaintiff's testimony that she did not record her hours anywhere for the December 27, 2020, through January 9, 2021, pay period. Sutter Dep. 13:15-22. Plaintiff also testified that none of the writing on the relevant paper timesheet was hers. *Id.* at 12:19-21. But the record shows that on January 8, 2021, Defendant Steen emailed Plaintiff to ask her to verify the hours she worked on December 28, 29, and 30. Steen Decl. Ex. 2. Plaintiff responded, "I wrote it on my timekeeping sheet." *Id.* Defendant states that the hours written on the timesheet overstate Plaintiff's actual hours worked as shown through garage and video records. Def. Mot. 19 (citing Risinger Decl. ¶ 3). Defendant's evidence indicates that Plaintiff inflated her hours worked in late December 2020. This is a legitimate, nondiscriminatory reason to terminate Plaintiff. Thus, Plaintiff must produce evidence that this reason was pretextual.

D.     Evidence of Pretext

Plaintiff does not dispute the discrepancy between the paper timesheet and the garage and video records. Instead, Plaintiff points to testimony from Defendant Steen that the paper timesheet is not an official document; the entry into the Kronos system is the official timecard. Pl. Resp. 23 (citing Mittendorf Decl. ¶ 4, Ex. 3 ("Steen Dep.") at 132:17-133:10). Plaintiff asserts that she did not write anything on the paper timesheet and that her email to Defendant

Steen "was a sarcastic remark made by Plaintiff to Steen because Plaintiff knew that Steen had illegally and improperly recorded her time on the paper timeslip." Pl. Resp. 9. Plaintiff points out that "neither side has offered any evidence from a handwriting expert regarding whose handwriting is what on the paper timeslip covering December 28, 2020, December 29, 2020, and December 30, 2020." *Id.* Plaintiff also points to testimony from Defendant Steen to the effect that Steen was the one who entered Plaintiff's time in Kronos for December 28-30, 2020. *Id.* at 23 (citing Steen Dep. 134:4-137:3). Plaintiff alleges that Defendant Steen entered Plaintiff's hours on the timecard in Kronos and set Plaintiff up to appear as though she had lied. *Id.*

Plaintiff has not shown pretext either directly or indirectly. She has not shown that Defendant's asserted reason is unworthy of credence or that discrimination more likely motivated Defendant. Plaintiff's suggestion that the Court should disregard her paper timesheet is not well-taken. She relies on Defendant Steen's testimony, but Defendant Steen testified that the paper timesheet, while not the official timecard, was "a way for us to be able to put the correct time into the timekeeping system." Steen Dep. 132:19-23. Plaintiff has produced no other record of her hours, based on either a contemporaneous writing or her own recollection, to counter Defendant's records. She admitted that she cannot do so. Sutter Dep. 16:25-17:4. She does not contest the discrepancy between the hours written on the timesheet and the hours shown through video records. Pl. Resp. 9.

Nor does Plaintiff dispute that she wrote the email to Defendant Steen stating that she wrote her hours on the paper timesheet. Plaintiff's statement in her deposition that she did not write in the timesheet is insufficient to show pretext. *Opara v. Yellen*, 57 F.4th 709, 726 (9th Cir. 2023) (no "'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony") (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5 (9th

Cir. 2002)). As Defendants point out, Plaintiff has identified no admissible evidence in the record supporting her assertion that the email was a "sarcastic remark." Def. Reply 3, 7, ECF 46. While Plaintiff asserts that she knew Defendant Steen altered her paper timesheet, she provides no evidence to support that assertion. She was free to offer evidence that Defendant Steen wrote on the timesheet (for instance, by seeking a sample of her handwriting in discovery), but Plaintiff did not do so. The lack of testimony from a handwriting expert does not show a genuine dispute of material fact.

Plaintiff has not produced evidence in support of her theory that Defendants falsified her time records to manufacture a reason to terminate her. She has not provided sufficient evidence to question whether she herself wrote her hours on the paper timesheet. The only other evidence of pretext in the record is the proximity in time between when Plaintiff's counsel emailed the demand letter to Defendant Shriners (January 19, 2021) and when Defendant Shriners terminated Plaintiff (January 25, 2021). Pl. Resp. 9 (noting that less than a week passed between the sending of the demand letter and Plaintiff's termination). The record shows that Defendants were already investigating Plaintiff's hours before the demand letter was sent. Defendant Steen emailed Plaintiff on January 8, 2021, to ask her to confirm her hours worked on the days in question. Steen Decl. Ex. 2. And Plaintiff does not dispute that Defendants tried to meet with her to discuss the timecard discrepancy. Pl. Resp. 9.[1] Under the circumstances, the timing of Plaintiff's termination is insufficient on its own to raise a genuine issue with respect to pretext. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1070 (9th Cir. 2003) (stating that timing alone may not be enough to raise a genuine issue on pretext), *as amended* (Jan. 6, 2004); *Mitchell v. Superior Ct.*

---

[1] As Defendants note, Plaintiff submitted no admissible evidence addressing the circumstances of the attempted meeting. *See* Def. Reply 3.

*of Cal. Cnty. of San Mateo*, 312 F. App'x 893, 894 (9th Cir. 2009) (timing alone was insufficient to overcome summary judgment when record contained extensive documentation of plaintiff's misconduct). Because Plaintiff has failed to produce direct evidence or specific and substantial circumstantial evidence that Defendant Shriners' proffered legitimate reason for terminating her was pretextual, Defendant is entitled to summary judgment on Plaintiff's disability discrimination and whistleblower claims.

IV.    **Claim 6: Failure to Pay Wages**

Plaintiff's sixth claim for relief alleges that Defendant Shriners failed to pay the PTO she was owed for two holidays: Friday, November 27, 2020, the day after Thanksgiving; and Friday, December 25, 2020, Christmas Day. Compl. ¶¶ 127-140. Defendant argues that Plaintiff was not owed any PTO for those days because she was not regularly scheduled to work on those days. Def. Mot. 17. The Court concludes that the undisputed evidence shows that Plaintiff was not entitled to PTO on the days in question, so Defendant is entitled to summary judgment on this claim.

"When an employer discharges an employee or when employment is terminated by mutual agreement, all wages earned and unpaid at the time of the discharge or termination become due and payable not later than the end of the first business day after the discharge or termination." O.R.S. 652.140(1). Defendant Shriners' employee handbook regarding holidays observed provides: "If the observed holiday falls on an employee's regularly scheduled workday and the employee works in a department or function, which would be closed, time off will be paid with the employee's available PTO." Daugherty Decl. ¶ 5 (citing Ex. 3 at 2-3). The parties agree that under the handbook, both the Friday after Thanksgiving and Christmas Day are holidays. Def. Mot. 6; Pl. Resp. 6.

Central to Plaintiff's claim is the parties' dispute over whether Plaintiff was a 1.0 FTE employee or a 0.8 FTE employee. According to Defendant, Plaintiff was at all times a 0.8 FTE employee. Def. Mot. 4. Considerable evidence in the record supports this argument. Plaintiff's position was advertised as a part-time, 0.8 FTE position. Sutter Dep. 21:3-4; Kreutzer Decl. Ex. 3. But Plaintiff's offer letter stated that she was a 1.0 FTE. Mittendorf Decl. Ex. 1. This was the only document that ever indicated that Plaintiff was a 1.0 FTE employee. Risinger Dep. 68:8-10. Risinger testified that it was a clerical error. *Id.* at 67:25-68:1. The new hire checklist for Plaintiff lists her position as 0.8 FTE. Daugherty Decl. Ex. 1.

Email correspondence between Plaintiff, her supervisors, and HR shows that Plaintiff was treated as 0.8 FTE. On February 8, 2020, Plaintiff's then-supervisor, Suzanne Diers, emailed Plaintiff, "You worked more than your 8 hours every day <u>and</u> came in on timecard Friday. I really need you [sic] do your best to stay within your 64 hours." Kreutzer Decl. Ex. 4; Sutter Dep. 49:12-16. On June 15, 2020, Defendant Steen emailed Plaintiff, "I apologize for our miscommunication regarding your PT status. I am not able to move you into a full time position, at this time. Your hours are 0700-1530 Mon-Thurs: 64 hours/PP." Kreutzer Decl. Ex. 5; Sutter Dep. 55:9-20. On November 30, 2020, Defendant Steen emailed Plaintiff, "Hello Danielle, I fixed your time card, However you are not eligible for PTO on Friday, That is an extra shift day for you and would be above your FTE. We have spoken about this several times, If you have any concerns I will refer you to HR." Steen Decl. Ex. 1 at 2. Risinger then emailed Plaintiff:

> Susan's response to your email is correct. You would only receive PTO for days you were expected to work. You are expected to report to work Mondays through Thursdays, 8:15am-4:45pm, 64 hours per pay period. You are not expected to report to work on Fridays, nor are you able to volunteer for additional front desk screening shifts on days when we are closed; thus you are not able to receive PTO for this day.

*Id.*

Defendant argues that even if Plaintiff was hired as a 1.0 FTE employee because of her offer letter, she accepted the prospective modification of her employment to 0.8 FTE. Def. Reply 5-6. Under Oregon law, an at-will employee can impliedly consent to a change in the terms of employment if she continues to work under the new terms. *Page v. Kay Woolen Mill Co.*, 168 Or. 434, 439, 123 P.2d 982 (1942) (holding that plaintiff assented to change in terms of employment when he was notified that he would not be paid a bonus in the future and he continued to work for defendant); *Albrant v. Sterling Furniture Co.*, 85 Or. App. 272, 274-75 (1987) (holding that plaintiff impliedly accepted modification of at-will employment agreement where she continued to work for defendant after learning that her sales commission would be lower than she was told at hiring, and she was asked to work evening hours even though she was told at hiring that she would not); *Fish v. Trans-Box Sys., Inc.*, 140 Or. App. 255, 259-60, 914 P.2d 1107 (1996) (holding that plaintiff accepted modification of employment contract where he was told at hiring that he would receive health benefits and continued working for employer after being told he would not receive health benefits); *Moholt v. Dooney & Bourke, Inc.*, 63 F. Supp. 3d 1289, 1300 (D. Or. 2014) (holding that plaintiff was not owed commissions where he continued to work for employer after being told he would not be paid commissions).

Plaintiff does not dispute that she was an at-will employee as stated in her offer letter. *See* Mittendorf Decl. Ex. 1. While Plaintiff points to testimony of Defendant's corporate representative that an employee should be able to rely on their offer letter, Pl. Resp. 21, such testimony does not contradict the express statements from Plaintiff's supervisors and HR to Plaintiff that she was scheduled for 64 hours per pay period and was not a full-time employee. Plaintiff does not dispute these emails. Pl. Resp. 5.

The undisputed emails show that Plaintiff was a 0.8 FTE employee in November and December 2020, the months in which she alleges she was denied PTO. Plaintiff's arguments to the contrary are unavailing. With respect to the February 2020 email from Plaintiff's supervisor, Plaintiff argues that the email "does not expressly prohibit Plaintiff from working more than a 0.8 FTE." Pl. Resp. 5. The email establishes that Plaintiff was scheduled for 64 hours per pay period, and it does not give Plaintiff permission to exceed her 64 hours per pay period. Even if Plaintiff was hired as a 1.0 FTE employee, there is no genuine dispute as to whether Plaintiff was converted into a 0.8 FTE employee at least by February 2020. Once Plaintiff had been told that she was not a full-time employee, she could not rely on the offer letter as an at-will employee. Plaintiff points to no evidence besides the offer letter that she was ever treated as a 1.0 FTE employee.

Next, Plaintiff suggests that the timing of Defendant Steen's email in June 2020, within two weeks of Plaintiff's complaint to HR about Defendant Steen, indicates that the email was a pretext for retaliation. Pl. Resp. 5. In light of the February 2020 email from Plaintiff's prior supervisor, which Plaintiff does not dispute, Plaintiff was already set to work 64 hours per pay period. The only possible retaliation would be a refusal to move her to full-time work. Risinger's email to Plaintiff in November 2020 confirmed that Plaintiff was set for 64 hours per pay period, working Monday through Thursday, and Plaintiff does not dispute this email either. *Id.* "Plaintiff asserts this demonstrates that by preventing Plaintiff from being able to work a shift on Friday and thereby denying Plaintiff the opportunity to have PTO as proscribed [sic] by the Shriners employee handbook." *Id.* But she provides no evidence that her schedule was engineered to deny her the opportunity to receive PTO on certain holidays. The undisputed emails from Defendant Steen and Risinger in June 2020 and November 2020 show that during the relevant period,

Plaintiff was scheduled to work Monday through Thursday, 64 hours per pay period. The timing of Defendant Steen's June 2020 email is not, on its own, sufficient to create a genuine dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

The undisputed evidence shows that Plaintiff was not entitled to PTO on the holidays in question. Under the employee handbook, Plaintiff was not entitled to PTO on Friday, November 27, 2020, the day after Thanksgiving; and Friday, December 25, 2020, Christmas Day, because those were not regularly scheduled workdays for her. Plaintiff suggests that the "regularly scheduled workday" provision of the handbook is ambiguous, but does not explain how it is ambiguous or provide evidence that she reasonably misunderstood the provision. Pl. Resp. 6. Finally, Risinger testified that Plaintiff could request to work additional hours and be approved in advance, and had in fact done so more than once. Risinger Dep. 51:25-52:5. Plaintiff provides no evidence to dispute this and no evidence that she was approved to work additional hours on the days in question. Plaintiff was not entitled to PTO on Friday, November 27, 2020, or Friday, December 25, 2020. Defendant Shriners is therefore entitled to summary judgment on this claim.

//

//

//

//

//

//

//

**CONCLUSION**

Defendants' Motion for Summary Judgment [39] is GRANTED.

IT IS SO ORDERED.


DATED:_____August 15, 2023_____.



_____
MARCO A. HERNÁNDEZ
United States District Judge